FILED
2017 Jun-22 PM 03:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDER MARTINEZ, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:17-cv-00256-RDP |
| } | |
| RONALD W. HUDSON, et al., } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

This case is before the court on Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 5) and Plaintiffs' Motion to Strike (Doc. # 9). The parties have briefed the motions, and they are under submission. (Docs. # 8, 11-12). For the reasons explained below, the court concludes that Defendants' motion is due to be granted in part and denied in part. Plaintiffs' motion is due to be denied.

**I.      Background**

   **A.      The Complaint's Allegations**

This case arises from Eder Martinez's and Adam Denard's interactions with officers in the Adamsville Police Department following a January 2016 accident. According to the Complaint, on January 26, 2016, a City of Adamsville employee struck Martinez's trailer with another vehicle on Highway 78. (Doc. # 1 at ¶¶ 12-13). Martinez parked on the shoulder of Highway 78 because the accident broke a trailer axle. (*Id.* at 14). Defendants William McKinney and Ronald Hudson, police officers for the Adamsville Police Department, investigated the accident. (*Id.* at ¶¶ 7-8, 15-16). Hudson refused to accept an electronic copy of

an insurance card from Martinez. (*Id.* at ¶ 17). McKinney searched for records associated with Martinez's truck and asked him about a discrepancy between his truck, a Ford F-250, and the records that associated the license plate with a Ford F-150. (*Id.* at ¶ 20). Hudson then accused Martinez of altering the truck's Vehicle Identification Number ("VIN"). (*Id.* at ¶ 21). Hudson directed Martinez to remove the trailer from the highway shoulder (*id.* at ¶ 22), and McKinney informed Martinez that the truck would be impounded. (*Id.* at ¶ 26). Ultimately, Martinez's truck and trailer were towed away from Highway 78 and held at an Adamsville impound lot. (*Id.* at ¶ 29).

Martinez returned home and picked up his paperwork regarding the truck. (*Id.* at ¶ 31). After doing so, Martinez and Denard went to the Adamsville Police Department to retrieve the truck and trailer. (*Id.* at ¶ 32). At the station, Defendant Ira Leniger took Martinez and Denard into custody while he investigated the matter. (*Id.* at ¶ 33). Officers detained Martinez and Denard in a jail cell for approximately two hours, after which they were released. (*Id.* at ¶¶ 34-35). Leniger declined to provide Martinez proof that the investigation had occurred and would not disclose what records misidentified his truck as a Ford F-150.[1] (*Id.* at ¶ 36).

Plaintiffs' complaint presents eight separate 42 U.S.C. § 1983 claims. (*Id.* at ¶¶ 37-84). Plaintiff Martinez alleges that Defendants Hudson and McKinney violated his Fourth Amendment freedom from unreasonable seizure of property when they seized his truck. (*Id.* at ¶¶ 37-48). Martinez also alleges that Defendants Hudson, McKinney, and Leniger violated his Fourth Amendment freedom from unreasonable seizure when they incarcerated him in the Adamsville City Jail without arguable probable cause to believe he committed a crime. (*Id.* at ¶¶ 49-66). Likewise, Plaintiff Denard claims that the three Defendants violated his Fourth

---

[1] Martinez has made substantially similar factual averments in his submitted affidavit. (Doc. # 8-1).

Amendment freedom from unreasonable seizure when they incarcerated him in the Adamsville City Jail without arguable probable cause. (*Id.* at ¶¶ 67-84).

B.  **Additional Evidentiary Submissions**[2]

On February 16, 2016, Plaintiff Martinez signed a release of claims against the City of Adamsville, Samuel Dean Owen, and Alabama Municipal Insurance Company, as well as their agents and servants. (Doc. # 5-2). In exchange for $6,253.29, Martinez agreed to discharge "any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation" which "accrue[d] on account of or in any way [grew] out of . . . the accident, casualty, or event which occurred on or about the 26th day of January, 2016, at or near U.S. Highway 78 in Adamsville, Alabama." (*Id.*) (emphasis in original).

In his affidavit, Plaintiff Martinez avers that he brought a Carfax report, two insurance cards, and a print-out of a "Ford Motor Vehicle VIN on-line search" with him when he returned to the Adamsville Police Department on January 26, 2016. (Doc. # 8-1 at 5). Nevertheless, Defendant Leniger refused to review the documents "and said he didn't have to look at [them]." (*Id.*). Leniger directed Martinez and Denard to empty their pockets, frisked them, and held them in jail until he completed an investigation. (*Id.* at 5-6; Doc. # 8-3 at 4-5).

---

[2] Plaintiffs request that the court strike Defendants' documentary evidence of the investigation (Doc. # 5-4) because the documents have not been authenticated. (*See generally* Doc. # 9). It appears that Defendants have proffered these documents without any attempt at authentication. But, courts routinely consider unauthenticated documents at the summary judgment stage when it is apparent that the documents are capable of reduction to admissible, authenticated form. *See, e.g.*, *Johnson v. Mobile Infirmary Med. Ctr.*, 2015 WL 1538774, at *1 (S.D. Ala. Apr. 7, 2015) ("It is well settled that exhibits are properly considered for summary judgment purposes as long as they may be reduced to admissible form at trial."). It is apparent to the court that the VIN search records can be reduced to admissible, authenticated form at trial. Therefore, Plaintiffs' motion to strike (Doc. # 9) is due to be denied. Having said that, the submitted search records are of limited value to the court. For example, they reveal that VIN searches concerning Martinez's truck were conducted on January 26, 2016, but they do not indicate that Hudson, McKinney, or Leniger conducted or directed any such search. (*See* Doc. # 5-4 at 6-9) (suggesting than an individual named Phillips conducted the searches).

## II.     Standard of Review

Defendants suggest in the caption of their motion that they seek dismissal of Plaintiffs' claims and summary judgment as an alternative remedy.  (*See* Doc. # 5 at 1).  A review of their brief, however, indicates that Defendants primarily seek summary judgment on the meager record presented with their motion.  For example, Defendants argue that the court should dismiss Plaintiff Martinez's claims because of a release mentioned nowhere in the complaint.  (Doc. # 5-1 at 3-5).  And, Defendants argue that the court should grant them qualified immunity because they had arguable probable cause to arrest Plaintiffs, as shown by an evidentiary exhibit attached to the motion.  (*Id.* at 6-7) (citing Doc. # 5-4).  Even though this case is in the early stages of litigation, Plaintiffs have agreed to play on the field laid by Defendants and have submitted affidavit and documentary evidence to oppose Defendants' motion.  (Docs. # 8, 8-1, 8-2, & 8-3).  The court sees no option other than ruling on Defendants' motion as a motion for summary judgment.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *Id.* at 323.  Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial.

*Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("*Anderson*"). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. For Bibb Cty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on her allegations made in the complaint; instead, as the party bearing the burden of proof at trial, she must come forward with at least some evidence to support each element essential to her case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

## III. Analysis

Defendants' motion presents three bases for summary judgment on both Denard's and Martinez's claims: (1) qualified immunity, (2) discretionary-function immunity, and (3) the City of Adamsville's responsibility for damages from actions committed within the line and scope of

Defendants' job duties.[3] Additionally, Defendants insist that the court should dismiss Plaintiff Martinez's claims because they fall within the scope of the February 2016 release. The court begins its discussion by determining the effect of the release.

### A. All Five of Martinez's § 1983 Claims Fall Within the Scope of the February 2016 Release

It is well settled than an unambiguous release of claims supported by consideration will be applied "according to the intention of the parties to be judged from what appears within the four corners of the instrument." *Conley v. Harry J. Whelchel Co.*, 410 So. 2d 14, 15 (Ala. 1982). Parol evidence cannot be used to impeach the terms of an unambiguous release. *Id.*

In *Nix v. Henry C. Beck Company*, the Alabama Supreme Court interpreted a release discharging all claims that accrued to a party under a construction contract or grew out of that construction contract. 572 So. 2d 1214, 1215-17 (Ala. 1990). Although the parties had entered into the release during a settlement of a breach of contract claim, the Alabama Supreme Court held that the release also discharged a negligence claim arising from asbestos installation because its "unambiguous" language evinced an intent "to prevent the parties from asserting any claim or claims that might arise out of the . . . contract." *Id.* In response to an argument that the parties had intended to limit the release to contract claims, the Alabama Supreme Court observed that the parties could have expressly omitted other types of claims from the general release. *Id.* at 1216.

Here, the court concludes that Plaintiff Martinez's February 2016 release foreclosed the claims he has brought against Defendants, who are all employees of the City of Adamsville. The

---

[3] Defendants' argument that the court should dismiss the individual liability claims because their actions were committed within the scope of their employment is meritless. It is axiomatic that a plaintiff may sue an individual defendant responsible for unconstitutional conduct committed under color of state law in his or her individual capacity under § 1983, subject of course to the defense of qualified immunity. *Cf. Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).

court finds the release's language unambiguous and concludes from the terms of the release that Martinez intended to give up his right to pursue all claims that had accrued or might arise from the accident that occurred on Highway 78. *Cf. Nix*, 572 So. 2d at 1216 (holding that similar claim discharge language in a release discharged all claims that might have arisen from a particular contract). Significantly, as Plaintiffs explain in the complaint, the accident that occurred near Highway 78 on January 26, 2016 caused Adamsville police officers to conduct an investigation and impound Martinez's truck and trailer. (Doc. # 1 at ¶¶ 12-29). Martinez's first two claims accrued at the time of the alleged unlawful seizure, which occurred on Highway 78. (*See id.* at ¶¶ 37-48). And, Martinez's third, fourth, and fifth claims grew out of the accident (and the related impoundment) as he was arrested when he attempted to retrieve the truck and trailer. (*See id.* at ¶¶ 32-35, 49-66). Martinez signed the release on February 16, 2016, after all of these claims had accrued. (Doc. # 5-2). Thus, Martinez released all of the § 1983 claims raised in this action when he signed the unambiguous release in favor of the City of Adamsville and its employees.[4]

### B. Defendants Are Not Entitled to Qualified Immunity From Denard's Claims Under the Submitted Rule 56 Record

Defendants seek qualified immunity on the scant Rule 56 record presented to the court, which includes no testimony from the officers involved in the arrests. With regard to Plaintiff Denard's claims, the court believes more discovery is needed to determine whether Defendants violated his clearly established rights by detaining him without arguable probable cause.[5]

---

[4] Martinez's testimony explaining the intended scope of the release (Doc. # 8-1 at 6) cannot be considered by the court because it is inadmissible parol evidence. *See Conley*, 410 So. 2d at 15.

[5] The court need not determine -- and does not determine -- whether Defendants are entitled to qualified immunity from Plaintiff Martinez's § 1983 claims because Martinez discharged those claims when he signed the release submitted by Defendants.

7

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity utilizes an objective reasonableness standard, "giving a government agent the benefit of the doubt unless her actions were so obviously illegal in the light of then-existing law that only an official who was incompetent or who knowingly was violating the law would have committed them." *GJR Invs., Inc. v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1366 (11th Cir. 1998), *overruled on other grounds by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010). The Eleventh Circuit has cautioned that "courts should think long and hard before stripping defendants of immunity." *Ray v. Foltz*, 370 F.3d 1079, 1082 (11th Cir. 2004). "We generally accord . . . official conduct a presumption of legitimacy." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 179 (1991).

Whether a defendant is entitled to qualified immunity is determined by engaging in a three-step analysis. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136-37 (11th Cir. 2007). The initial burden is on an official claiming qualified immunity to establish that he or she was acting within his or her discretionary authority. *Id.* Here, Plaintiff Denard does not dispute that Defendants acted within their discretionary authority while investigating a possible crime and placing him under arrest. *Cf. Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (holding that an Alabama deputy sheriff had performed a discretionary function when arresting a plaintiff). Once that showing is made, the burden shifts to a plaintiff to show that the "defendant's conduct violated a statutory or constitutional right." *Skop*, 485 F.3d at 1137. Finally, "the plaintiff must show that the violation was 'clearly established.'" *Id.*; *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1328 (11th Cir. 2003) ("When case law is needed to

8

'clearly establish' the law applicable to the pertinent circumstances, we look to decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." (citing *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1032-33 n. 10 (11th Cir. 2001) (en banc)).

The Fourth Amendment, which is applicable to the states through the Fourteenth Amendment, guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV; *see Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). To raise a false imprisonment claim under § 1983, a plaintiff must allege "common law false imprisonment and establish that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). A plaintiff can present a viable false imprisonment claim if he or she was detained based on a false arrest. *Id.* "Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* But where probable cause supports an arrest, it acts as "an absolute bar to a section 1983 claim for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004).

"Probable cause exists when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Wilkerson v. Seymour*, 736 F.3d 974, 978 (11th Cir. 2013) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted)). "An officer is entitled to qualified immunity, however, where the officer had 'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause

9

existed to arrest' the plaintiffs." *Id*. at 977-78 (quotation marks and citation omitted). "Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville, Ala*., 608 F.3d 724, 735 (11th Cir. 2010).

Defendants claim that their arrest of Plaintiff Denard was clearly justified, but have wholly failed to identify any criminal offense which they believed he committed. (*See* Doc. # 5-1 at 6-7). The court finds that the most relevant Alabama criminal offenses are theft of property and unauthorized use of a vehicle. A defendant commits theft if he or she "[k]nowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property." Ala. Code § 13A-8-2(a)(1). A defendant is guilty of unauthorized use of a vehicle if he or she "takes, operates, exercises control over or otherwise uses a propelled vehicle" with knowledge that he or she lacks consent from the owner of that vehicle. *Id.* § 13A-8-11(a)(1).

Here, based on the limited Rule 56 record, the court concludes that material disputes of fact remain as to whether Defendants had arguable probable cause to believe that Plaintiff Denard committed a criminal act. Even if the court accepts that Defendants were aware of a discrepancy between the model number in electronic records regarding Martinez's truck and the truck's actual model number (*see* Doc. # 1 at ¶ 20), the court cannot discern a basis for the officers to believe that *Denard* himself obtained or exerted control over the vehicle, a necessary element to support a theft charge against him. *Cf.* Ala. Code § 13A-8-2(a)(1). The undisputed evidence shows that while Martinez claimed ownership of the truck and attempted to prove his ownership, Denard never claimed ownership of the truck. Likewise, the court does not understand how Defendants could have reasonably believed that Denard used the truck with

10

knowledge that its actual owner did not consent, given Martinez's consistent claims that he owned the truck and his attempts to offer proof of ownership. Moreover, the Rule 56 record presents a material question of whether Defendants violated Denard's (and, for that matter, Martinez's) clearly established constitutional rights by ignoring exculpatory evidence presented by Martinez before the arrest. (Doc. # 8-1 at 5) (discussing paperwork that Defendant Leniger refused to review). *See Kingsland*, 382 F.3d at 1228-29 (explaining that an investigating officer "may not close his or her eyes to facts that would help clarify the circumstances of an arrest") (quoting *Sevigny v. Dicksey*, 846 F.2d 953, 957 n. 5 (4th Cir. 1988)). Plaintiffs' undisputed averments suggest that Defendants arrested Denard and held him for two hours in a jail cell to investigate a VIN discrepancy without considering the paperwork offered by a purported owner of the truck or that Denard never claimed (or appeared) to be in ownership or possession of the vehicle. Because the Rule 56 record indicates that Defendants lacked arguable probable cause to believe Denard committed a crime *and* that Defendants conducted an insufficient and selective investigation, Defendants' request for qualified immunity is due to be denied without prejudice.[6]

### C. Defendants Are Not Entitled to Discretionary-Function Immunity From Plaintiff Denard's § 1983 Claims

Municipal police officers in Alabama (referred to as peace officers) are afforded discretionary-function immunity from tort liability for conduct committed within the line and scope of law enforcement duties. *Hollis v. City of Brighton*, 885 So. 2d 135, 142-43 (Ala. 2004) (quoting Ala. Code § 6-5-338(a)). A police officer's statutory tort immunity is determined by the same standard as state-agent immunity under Alabama law. *Id.* at 143. Among other acts, a municipal police officer is immune from civil liability in his or her personal capacity for his or

---

[6] The court recognizes that it lacks testimony from the investigating officers. Accordingly, the court will grant Defendants an opportunity to reassert their qualified immunity defense when additional supporting evidence is obtained.

11

her exercise of judgment in enforcing criminal laws. *Id.* (quoting *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000)).

To analyze discretionary-function immunity, the court first determines whether a defendant was performing a discretionary function when an alleged tortious act occurred. *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003). If a defendant was performing a discretionary function, a plaintiff must show that the defendant "acted in bad faith, with malice or willfulness" to defeat discretionary-function immunity. *Id.* (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1303 n. 9 (11th Cir. 2001)).

Here, Defendants are not entitled to discretionary-function immunity from Plaintiff's § 1983 claims. Defendants have not cited (and the court has not found) any authority to support the proposition that Alabama statutory discretionary-function immunity applies to federal § 1983 claims. (*See* Doc. # 5-1 at 15-19). The Alabama Code does not discuss whether a municipal peace officer's discretionary-function immunity extends to claims under federal law. Ala. Code § 6-5-338(a). To the extent an Alabama officer could receive discretionary-function immunity in a situation where he or she is ineligible for qualified immunity, the court would first have to consider whether federal law is deficient concerning officers' entitlement to immunity. *See Estate of Gilliam ex rel. Waldroup v. City of Prattville*, 639 F.3d 1041, 1045 (11th Cir. 2011) (explaining the process for determining whether federal or state law is applied to an issue arising in a civil rights case, pursuant to 42 U.S.C. § 1988(a)). The court is confident that federal qualified immunity doctrine adequately addresses officers' entitlement to immunity from civil rights claims under § 1983. *Cf. Jaworski v. Schmidt*, 684 F.2d 498, 500-01 (7th Cir. 1982) (rejecting an argument that the court should apply state law that provided a more limited form of official immunity); *Hebein ex rel. Berman v. Young*, 37 F. Supp. 2d 1035, 1047 n. 17 (N.D. Ill.

1998) (citing *Jaworski* for the legal rule that "state law immunities do not apply to § 1983 claims"). Thus, the court likely would conclude, pursuant to 42 U.S.C. § 1988(a), that Alabama's discretionary-function immunity is inapplicable to a § 1983 claim. In any event, as the Eleventh Circuit has found, discretionary-function immunity is more restrictive than qualified immunity. *See Scarbrough*, 245 F.3d at 1303 n. 9. The court already has concluded that Defendants are not entitled to qualified immunity from Denard's § 1983 claims. Therefore, as a matter of law and logic, Defendants are not entitled to discretionary-function immunity either.[7]

**IV.   Conclusion**

For the reasons explained above, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 5) is due to be granted in part and denied in part. Plaintiff Martinez's claims (counts one through five of the complaint) are due to be dismissed with prejudice; Plaintiff Denard's claims (counts six through eight) are due to go forward to discovery. In all other respects, Defendants' motion is due to be denied without prejudice to re-filing after discovery. An Order consistent with this Memorandum Opinion will be entered.

**DONE** and **ORDERED** this June 22, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[7] If Defendants intend to reassert discretionary-function immunity as a defense in a renewed dispositive motion, the court expects them to explain (1) how discretionary-function immunity is broader than qualified immunity *and* (2) why discretionary-function immunity is applicable to a § 1983 claim under the choice-of-law test provided in § 1988(a) and *Gilliam*, 639 F.3d at 1045.